UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D

OCT 2 6 2005

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-624-GWU

CECIL HAMBLIN,                                                PLAINTIFF,

VS.                          **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                      DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI). The appeal is currently before the Court on cross-motions

for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.  Is the claimant currently engaged in substantial gainful activity?
    If yes, the claimant is not disabled. If no, proceed to Step 2.
    See 20 C.F.R. 404.1520(b), 416.920(b).

2.  Does the claimant have any medically determinable physical
    or mental impairment(s)? If yes, proceed to Step 3. If no, the
    claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.  Does the claimant have any severe impairment(s)--i.e., any
    impairment(s) significantly limiting the claimant's physical or
    mental ability to do basic work activities? If yes, proceed to

1

Hamblin

Step 4.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4.    Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months?  If yes, proceed to Step 5.  If no, the claimant is not disabled. <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5.    Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.    <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.    Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.   If no, proceed to Step 7.   <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.    Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.    <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

2

Hamblin

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Hamblin

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

Hamblin

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

Hamblin

may be required to consult a vocational specialist.  <u>Damron v. Secretary</u>, 778 F.2d
279, 282 (6th Cir. 1985).   Even then, substantial evidence to support the
Commissioner's decision may be produced through reliance on this expert testimony
only if the hypothetical question given to the expert accurately portrays the plaintiff's
physical and mental impairments.   <u>Varley  v. Secretary of Health and Human
Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Cecil Hamblin, was found by an Administrative Law Judge (ALJ)
to have "severe" impairments consisting of discogenic and degenerative disorders
of the back and "residuals status post clavicle fracture." (Tr. 17).  Nevertheless,
based in part on the testimony of a vocational expert (VE), the ALJ determined that
Mr. Hamblin retained the residual functional capacity to perform a significant number
of jobs existing in the economy and, therefore, was not entitled to benefits.  (Tr. 19-
23).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of
the plaintiff's age, education, and work experience could perform any jobs assuming
that he were limited to light level exertion, and also had the following non-exertional
impairments.  (Tr. 350).  He: (1) required the option of sitting or standing every 30
minutes; and (2) could only occasionally bend, stoop, climb, or crawl. (Id.). The VE
responded that there were jobs that such a person could perform, and proceeded

7

to give the numbers in which they existed in the regional and national economies.
(Id.).

On appeal, this Court must determine whether the hypothetical factors
selected by the ALJ are supported by substantial evidence, and that they fairly depict
the plaintiff's condition.

The plaintiff raises only one argument on appeal. He points out that the ALJ
based the hypothetical question on the conclusions of non-examining state agency
physicians who did not review the complete record (Tr. 171-80, 195-202).
Subsequently, Mr. Hamblin's treating family physician, Dr. Thomas Doncaster,
submitted a physical residual functional capacity assessment limiting his patient to
lifting no more than 10 pounds occasionally and 0 pounds frequently due to non-
union of a right clavicle fracture, a lumbosacral disc bulge with severe
encroachment, and degenerative disc disease. (Tr. 207-10). He also limited his
patient to standing four hours in an eight-hour day (no more than 30 minutes without
interruption), sitting for six hours (no more than 30-45 minutes without interruption),
never climbing, balancing, crouching, kneeling, or crawling, occasionally bending,
and having limitations on reaching, handling, pushing/pulling, working around
heights, moving machinery, and vibration. (Id.).

Noting that Dr. Doncaster's restrictions had been submitted after the
administrative hearing at which the VE had been questioned, the ALJ stated in a

8

Hamblin

footnote to his decision that he did not accept the treating physician's opinion for several reasons. (Tr. 21).

To the extent that the ALJ relied on the opinions of the non-examiners over the treating source, this action was misplaced. As a general rule, the opinion of a non-examining physician may be accepted over that of an examiner where the non-examiner has had access to the entire record and clearly commented on the reasons that his opinion differed from that of the examiner. Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994). In the present case, the non-examining sources could not have commented on Dr. Doncaster's opinion, which was received after they completed their forms, although the record was otherwise complete. Only one of the non-examiners, Dr. Howard Phillips, even provided a rationale for his restrictions, which relied heavily on Dr. Carter's consultative examination. (Tr. 178-80). Dr. Doncaster's office notes which had been submitted earlier were discussed only in a single, two-sentence paragraph. (Tr. 178). This could not be said to be an adequate analysis with which to reject a subsequently submitted opinion from the treating source.[1]

----

[1] Some of Dr. Phillips' commentary was patently subject to question. The non-examiner cited a lumbosacral spine MRI from 1997 which showed degenerative changes but, reportedly, no evidence of a herniated disc. (Tr. 178). Actually, while one examiner, Dr. William Brooks, did not find evidence of a herniated disc at that time (Tr. 101), another neurosurgeon in the same office, Dr. Steven Kiefer, felt that there was "some central and small disc protrusion at the L4-L5 level and a similar finding of less magnitude at the L5-S1 level" (Tr. 97). More relevant to the time period at issue,

9

Hamblin

Second, the ALJ found that the Dictionary of Occupational Titles (DOT) did not indicate that the jobs described by the VE (i.e, amusement clerk, parking lot attendant, checker at a dump ground, and assembler) would require climbing, balancing, crouching, kneeling, exposure to heights, machinery, or vibration. Be that as it may, the ALJ admitted that *the DOT showed that the jobs would require frequent reaching and handling*, whereas  Dr. Doncaster had marked on his form assessment that both handling and reaching were affected by the plaintiff's non-union of the clavical fracture (Tr. 209).

Some of the specific reasons advanced by the ALJ to refuse to acknowledge any handling or reaching restrictions on the plaintiff do not hold up to scrutiny. The plaintiff had testified that, although he had lost parts of two fingers on his right hand in an accident at age 16, he had learned to deal with the problem, and had worked successfully for many years as a mechanic.  (Tr. 333).  Thus, the ALJ apparently rejected any limitations as a result (Tr. 21, n. 1), which is reasonably consistent with

---

another MRI had been obtained in October, 2001, which had been interpreted by the radiologist as showing a herniated disc at L5-S1, producing "severe" neural foraminal encroachment.  (Tr. 148).  Dr. Phillips noted these results without comment, and emphasized the lack of any findings of nerve root compression on Dr. Carter's physical examination.  (Tr. 178-9).   Dr. Phillips described Consultative Examiner Carter's findings as only "mild" limitations and as being "essentially normal" (Tr. 179), whereas a review of the actual report shows that  Dr. Carter had found some reduction in the plaintiff's right arm strength, along with a reduced range of motion in the right shoulder by 15 degrees versus the left "with deformity and possible overlap of the distal right clavicle," and a reduced range of motion of the right wrist  (Tr. 153-4).

Hamblin

the findings in <u>Auer v. Secretary of Health and Human Services</u>, 830 F.2d 594 (6th

Cir. 1987). However, the same rationale does not apply to the plaintiff's more recent

history of the clavicular fracture which the treating source had cited—and the ALJ still

did not find <u>any</u> reaching restrictions to be justified. (Tr. 109-10, 122). He indicated

that Dr. Doncaster gave no contrary medical findings to Dr. Carter's benign findings

(Id.)[2]; yet an examination of the record shows that Dr. Doncaster, in his office notes,

had described the plaintiff's right shoulder range of motion as "fair," but in the

context of complaints by the plaintiff that the problem became worse when he

attempted to use the arm (Tr. 119-20). Finally, the ALJ cited the plaintiff's apparent

statements to Dr. Doncaster that he was performing odd jobs and "trying" to do

mechanic work as recently as April and June, 2003 (Id.); there was no evidence of

how regular the cited work was performed at that point since it was designated as

"odd jobs" and it was noted that even that frequency of performance had to be

stopped due to pain (Tr. 235).

Under the circumstances, it would be reasonable to expect a treating source

to have more knowledge of how the non-union would affect the plaintiff's ability to

reach and possibly to handle. The same is true of the effects of the plaintiff's back

---

[2]As noted in footnote 1, <u>supra</u>, Consultative Examiner Carter <u>did</u> note some specific abnormalities—such as some reduction in the plaintiff's right arm strength, along with a reduced range of motion in the right shoulder by 15 degrees versus the left "with deformity and possible overlap of the distal right clavicle," and a reduced range of motion of the right wrist.

11

Hamblin

impairment. Dr. Doncaster had the opportunity to evaluate the plaintiff over a period of time, as opposed to Dr. Carter's one-time examination, and had personally referred the patient to specialists for further evaluation shortly before the alleged onset (e.g., Tr. 96, 106). Moreover, Dr. Carter was not the physician to complete a competing assessment, it was the non-examiners.

While the Court is sympathetic to the dilemma of an ALJ who has conducted a hearing only to later receive a functional capacity assessment from a treating physician, the evidence available to the treating physician, the information given in the functional capacity form, and the objective studies available will require a remand for additional medical expert or other testimony under the Barker rationale.

The decision will be remanded for further consideration.

This the ___26___ day of October, 2005.

G. WIX UNTHANK
SENIOR JUDGE